The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, and on behalf of my colleagues Judge Van Dyke and Judge Holly Thomas, welcome to the Ninth Circuit. We have three cases on the argument calendar this morning, and we will take them up in the order in which they appear on the calendar. There are a number of cases that we have submitted without argument. Offit, Evinger v. Georgia Pacific, Gypsum is submitted on the briefs. Miance v. Kijikazi is submitted on the briefs. Taylor v. Kijikazi is submitted on the briefs, and Luna-Martinez v. Garland is submitted on the briefs. With that, we will take up the first case on the argument calendar, Wolfe v. City of Portland. Good morning, Your Honors, and may it please the Court. My name is Corrigan Lewis with the Disability Rights Legal Center, and I represent plaintiffs Phillip Wolfe, Catalina Durden, and Jack Tadella in the matter before you today. At this time, I would like to request to reserve four minutes for rebuttal. Thank you, Your Honors. First Amendment protected speech is for everybody. Public safety is for everybody, and everybody includes people with disabilities. The District Court erred in dismissing plaintiff's First Amendment complaint for three reasons. First, plaintiff's claims are not moot, and there are genuine issues of material fact. Second, the deterrent effect and intent to return doctrines are applicable. And third, plaintiff's First Amendment complaint adequately alleges facts to entitle them to damages under Section 504 in the ADA. And for these reasons, we respectfully request that this Court vacate and remand. Your Honors, dismissal under 12b1 for lack of subject matter jurisdiction was inappropriate because there are genuine issues of material fact, specifically two in dispute, whether protests are ongoing in Portland and Oregon law, whether Oregon law provides sufficient rights to protect plaintiffs if they continue protesting. The District Court erred in determining that both of these mooted plaintiff's claims. Oregon law does not confer the same rights as the ADA. This Court has held that in Bell v. Boise, that a statute or regulation that does not have any sort of concrete standards or workability cannot moot plaintiff's case. In this immediate matter, House Bill 4008, which defendants rely upon to state that moots plaintiff's claims, doesn't even define disability. Therefore, whether or not plaintiffs are even entitled to protection under the statute is a genuine issue of material fact. Moreover, the term reasonable accommodation, which has a specific legal context and definition under Federal law, is also not defined by House Bill 4008. Therefore, it is a genuine issue of material fact as to what plaintiffs will be provided. Moreover, a major distinction between Oregon law and Federal law is Oregon law allows for officers have discretion as to when reasonable accommodations should be provided. Federal law has no officer discretion in this sort of matter. The ADA requires Title II public entities shall provide reasonable accommodations, shall provide effective communication. And here, defendants failed. To my second point, Your Honors, the deterrent effect and intent to return doctrines are applicable to the immediate case. And the district court's requirement that there be some sort of physical sort of barrier undermines 35 years of jurisprudence under the ADA. This court has routinely and regularly held that facially neutral policies that have a disparate or discriminatory impact on people with disabilities require modification. And this court in Chapman has held that when a plaintiff has indicated both they have been deterred by a barrier and that they have an intent to return to that location, that that is sufficient for Article III standing under the ADA. With regard to mootness, when was the, in your view, the last event that occurred at which your clients were denied what they claim are their ADA accommodations? Your Honor, our clients maintain that the barrier still exists. Okay, counsel, that wasn't my question. My question was, in your view, when was the last actual event that occurred at which the type of protest where your clients were denied the accommodations that they say they're entitled to under the ADA, et cetera? Yes, Your Honor. As indicated in the first amended complaint, Philip Wolfe wanted to attend protest in November 2021, but had to leave early. So almost two years ago? Yes, Your Honor, almost two years ago. And is there anything in the record to suggest that there was anything post-November 2021 that any of your clients, any protest that any of your clients wanted to attend? No, Your Honor, but the record does suggest that protests are regular and ongoing in Portland, and plaintiffs, as part of their First Amendment rights, have a right to participate in those without encountering any sort of barrier, particularly in the form of a discriminatory policy enacted by law enforcement. And in this situation, PPB has provided that they will give... What if it was November 2019 instead of November 2021? Would that make a difference to the mootness inquiry? No, Your Honor, because PPB still maintains a policy... November 1999? No, Your Honor. So it doesn't matter. If the last one was 40 years ago, the claim still wouldn't be moot, in your view? In our view, the facts underlying the claim here can still occur. Protests are still regular and ongoing in Portland. Let me follow up to that. So I get your view that it doesn't really matter the amount of time, because I think your view is that my clients have a barrier, and so they're not going now. So the last one they could have gone to was 20 years ago, because they've had a barrier. And I understand your argument is it's not just physical barriers. But if it's not just physical barriers, what is it? Because it seems like your argument is that your clients get to basically say, unilaterally, they just basically say, I don't feel safe to go, and then that creates standing. And it's a little bit of a... It seems to be detached from what the reality is. On one hand, if you could point to a specific one that was yesterday, and you said that's the kind of protest that they're not getting the accommodation they need, obviously be very tangible. On the other hand, though, it seems like you're saying, literally, there could have never been one, in some sense, you're saying that, but my clients subjectively feel like there's a barrier. And that's a little bit tough to say that should be a basis for standing, it seems like. So is there anything to get somewhere from where I'm maybe fairly or unfairly characterizing your position to closer to what I think the question that my colleague was asking? Yes, Your Honor. The Supreme Court has held in Tennessee versus Lane that the standard for determining whether there's a barrier is whether or not an individual has been denied meaningful access. Right. But if it's a physical barrier, that's something that seems like you can evaluate. Can you get your wheelchair past that, et cetera. If it's merely a subjective barrier, if it's entirely a subjective barrier, it seems like, I'm not sure that's what the Supreme Court meant. Assume that there was no physical barrier to a wheelchair game, but it's just like, I just don't feel comfortable bringing my wheelchair into this bar or whatever. I don't know that we'd say that there was a barrier there. So I'm trying to figure out, maybe you can just tell me, is your position that is purely subjective, that that's what matters, or is there some objective component to it that can be evaluated as far as your clients? If it's not physical, what can you point to that makes it objective, I guess, is the question I'm asking. Give me a second, because I want to make sure I'm answering you correctly. Again, the standard is meaningful access, and the ADA applies to physical barriers that prevent somebody that's using a wheelchair from accessing a The statute actually provides that effective communication is an accommodation that must be provided, right? And so that means that the defendants here have to provide that, and they've failed to do so. And so it is not necessarily a subjective standard. It is the fact that these individuals, because of their disabilities, because they are not able to understand the message that Their crowd management policies are defined as the public security practice in which crowds are managed to prevent outbreaks and crowd crushes. Sounds like it's to make sure that people are safe, right? To have communications, to have policies to ensure public safety. People disabilities must be included in this calculus. As must the ordinary citizens who may be the victims of the protests, right? Yeah, absolutely, Your Honor. And first, there should be no barriers to First Amendment protected speech. And here, there is a barrier because there are safety kind of protocols. When you say no barriers, so no barriers, what about the police trying to protect people who aren't protesting, people who may be the targets of the protests or the buildings that are the targets of the protests? Don't the police have the right to take that into account in deciding how to act? Yes, the police have discretion and how they have to act. However, the policies, practices, training that those officers receive must include some training on how to identify people with disabilities in the crowd, how to provide accommodations, how to communicate with them. Also having outward-facing policies that ensure that people receive effective communication. They have failed to do that here. And they have a history of failing to do that. And it is essential for this court to vacate and remand the finding of the District Court. Thank you, Your Honors. Thank you. So my understanding, do I pronounce your name Mr. Vannier? It's Vannier, Your Honor. Vannier, sorry. You have 10 minutes and your friend Mr. Gilmour has five. And the time on the clock will please the court, Denis Vannier, appearing for the city. The trial court correctly concluded that it lacked subject matter jurisdiction over plaintiff's request for prospective injunctive relief. And it also properly concluded that plaintiffs failed to state a claim for damages under the ADA and Rehabilitation Act. Plaintiffs do not show otherwise that this court should affirm the judgment of the District Court. First to address the request for prospective injunctive relief, plaintiff referred to issues of material fact. That is not the standard for Article III justiciability. The question, the issue as this court restated recently in the Bayer case is a request for injunctive relief remains live only so long as there is some present harm left to enjoin. And any threatened future injury must be, quote, actual and imminent, not conjectural or hypothetical. Here, as the District Court found, quote, protests triggering a law enforcement response involving force have been nearly nonexistent after May 2021. That's at SCR 22. And the court further noted that, quote, much of the remedy plaintiffs seek in this case has now been enacted into law in Oregon. And that's at the same page as well. Can I ask you, just because I don't live in Portland, and so is it the case, so when I read that from the District Court, is it the case that there are still lots of protests, but they're just sort of very peaceful and not the hype, or is it that there's not protests? There really aren't. No, there really aren't. I want to be completely fair to the court. There is no evidence of protests right now. So I that were provided. So there are three declarations by Commander Dobson, and that's in the excerpt of record, a declaration of Officer Davis, also in the record, and a declaration of Casey Hetman. And what those establish is that the types of protests that form the basis of the complaint, again, the sort of mass protests that nightly degenerate into riots, have long ended. There are occasional, as always happens, it often happens in large cities, public demonstrations, public events, public protests. But as the court noted, and this is at ER 13, protests are sporadic. Of those sporadic protests, the ones declared unlawful assemblies are minimal. And of those few declared unlawful assemblies, there were no allegations that any in the last several months involved excessive force, end quote. And that's really the issue. So the issue for plaintiff's request for injunctive relief, and again, that request is at ER 15455, and it asked the district court to order a comprehensive review of city policies surrounding protests and public order events, and to order the city to stop engaging in certain practices, including the use of certain types of munitions. And so, as the district court noted, the issue is not just are there demonstrations happening in Portland? The issue is, is there an actual and imminent risk of harm to plaintiffs that's conjectural and not hypothetical? And as the district court explained, in order for plaintiffs to suffer the sort of injury that is the subject of their request for injunctive relief, there would have to be a social justice protest in Portland. Plaintiffs would have to attend that protest. That protest would have to degenerate into a riot or unlawful assembly. Well, let me ask you sort of the flip side of what I asked your friend. In deciding these kinds of declaratory and injunctive relief mootness issues, what's the city's view of sort of what the temporal dividing line is? I mean, no one would argue that, well, the last protest was yesterday. They are. And your friend says that there's no temporal limit at all, essentially. What's the city's view of, you know, how you analyze that where you had these very serious protests with some very serious consequences and apparently there haven't been any like this for several years? So the standard is the standard that has been stated for, so in the Bayer and Summers cases, for example, for Article III standing to seek injunctive relief. There has to be a threat of future injury that is actual and imminent, not conjectural or hypothetical. And imminent is really the key word in this case. There has to be a sense of imminency and the injury has to be imminent. So basically the city's position is whatever imminent might mean in some other case where it passed here, it's not hard here. And that's correct, Your Honor. There was no showing of imminency in this case. And again, what's important to remember, it is the party asserting subject matter jurisdiction that has the burden of proving its existence. And in this case, plaintiffs introduced no evidence suggesting that there is a continuing risk that these type of protests would occur again. And in addition, as the this was a multi-factor analysis. Not only was there not evidence of protests, but there was no evidence that even if those kinds of protests would reoccur, the type of injury alleged by plaintiffs would reoccur because of intervening changes in state law. And so for that reason, the district court properly concluded that plaintiffs hadn't met their burden of establishing Article III subject matter jurisdiction for prospective injunctive relief. And for that reason, this court should affirm that part of the district court's opinion. And in the few minutes that I have left, I would like to address just very briefly the failure to state a claim under the ADA. As the district court noted to state a claim for damages under the ADA, plaintiffs had to allege sufficient fact to show deliberate indifference on the part of the city. And as the district court noted, the allegations in the First Amendment complaint, even if taken as true, were not sufficient to show deliberate indifference as to these three individual plaintiffs. Again, under Duval, deliberate indifference requires both knowledge that a harm to federally protective right is likely to occur and a failure to act on that likelihood. In addition, as this court explained, the failure to act has to be the result not just of negligence, but involve an element of deliberateness. And the plaintiff must identify or at least plead facts sufficient to allege a specific reasonable accommodation that was necessary and that was not provided, and has to plead facts sufficient at least to make a prima facie case that the accommodations that were in fact available were not reasonable. And as the district court explained, the allegations in the First Amendment complaint in this case were not sufficient to meet those requirements. And for that reason, the district court properly dismissed the damages claims under the ADA. Unless this court has any questions, I would ask the court to affirm the judgment of the district court. All right. Thank you, counsel. Thank you. We'll hear from the county now. May it please the court. Chris Gilmore for defendant Multnomah County. I think the most important issue with regard to defendant Multnomah County is whether or not there's any evidence either in the pleadings or allegations or the record to suggest that there is joint liability in this case. The briefings and the arguments you've heard today have focused almost entirely on the Portland Police Bureau. And Multnomah County, it's worth just looking at it from a jurisdictional perspective, is a county and there are cities within it. And police services are provided in those cities by those cities. And so with regard to protests in the city of Portland, the responsibility, the authority and the obligation rests with the city of Portland. The only possibility that Multnomah County would take over those services if they were expressly provided by the city of Portland. And we've seen that under the ADA, that the county somehow substantially participated in those activities enough to suggest that there is joint liability. Plaintiff's best argument, and I think the best place for this court to respond to this and evaluate this issue, is page 19 of the reply brief. And it is the second full paragraph. And this is plaintiff's best argument that there is joint liability. First, they cite to the record, and I will include citations, but it's all spelled out in the reply brief. They ask this court to look towards ER 144, paragraph 143, and that is entirely regulations out of the ADA. They are conclusions of law. They're not proper allegations. They include no facts that would assist this court in assessing joint liability. ER 148 through 64, paragraphs 160 through 64, cited by plaintiff, those again are citations to the legal provisions of the Rehabilitation Act. They are conclusions of law. They don't allege any facts. They are not helpful to this court in establishing liability. The other portion in that same paragraph, again being plaintiff's best foot forward, is ER 113. And if you look at the three paragraphs cited there, they are again conclusions, absent any facts. They say we believe and understand that there is this joint participation between the two agencies. They don't add any facts. There's no declarations to support these. These are conclusory insertions. And those three paragraphs are there. The only facts in this case are followed. So now we're finally to a point where we can consider the allegations of a complaint and whether they're sufficient to establish joint liability. One, there are executive orders that have been issued by the governor of the state of Oregon that authorize the state and Sheriff Wheeler to take control of the higher level decision making with regard to protests on specific dates. So there are times when the sheriff's office had a greater level of responsibility. And those executive orders, there was injury except for September 26, 2000. And now here we finally get to the heart of the matter. The single factual allegation in this case is that on September 26, 2020, a Multnomah County Sheriff's Officer, together with Porton Police, arrested, if I get this correct, Jack Catalina Durden. And during the course of that arrest, there was force used. What is entirely absent, and that is ER 133 paragraph 110. What is entirely absent from the complaint is allegations of repeated harm, allegations of imminent harm, all of the factual issues that would otherwise be a predicate for requesting the equitable relief, both declaratory and injunctive in this case. So Multnomah County stands in a position that has even less factual basis than the Portland Police Bureau, significantly less. So even if you decide to reverse and remand for the Portland Police Bureau, there's simply no way to get to the position to say there have been factual allegations sufficient to support injunctive and declaratory relief. And therefore, the district court's decision should be affirmed. The final point made by... So I think you're out of time, but why don't you go ahead and make your final point very briefly. Thank you, Your Honor. Is whether there's a contractual allegation in this case, that would change the outcome in this case. I would turn the court to the excerpt of record containing Sheriff Reese's opinion, sorry, declaration and the IGA. That's at 658 through 710. There are no provisions in the mutual aid agreement that require Multnomah County to provide crowd management services in the city of Portland. There's no contractual basis for joint liability. Thank you, Your Honor. Thank you. Counsel, it would help me if you could start by spending a moment on your damages claims and just point me to where in the record the plaintiffs put defendants on notice of their specific needs for accommodation, not the general principle that persons with disabilities are entitled to articulated in paragraph 147, 149, 152, and 186 of the first amended complaint. Also in the first amended complaint, Philip Wolfe informed Mayor Wheeler that Philip required an accommodation. Philip Wolfe also informed PPB officers that Philip required an accommodation, and Philip was told that people with disabilities do not belong at protests. And a few points to respond to my friend, the city of McGowdy. Plaintiffs' claims are not moot. There are ongoing protests. Reliance on their employment matter where an individual does not have a right to employment is fundamentally different than the situation we have here where plaintiffs have a right to first amended speech and have alleged a barrier. Knowledge under this court's jurisprudence in Duran allows for knowledge to be met, that second element of deliberate indifference, when the accommodation or modification is required by the ADA in section 504. Therefore, plaintiffs have met their obligation to show knowledge. Joint liability is permitted under the ADA. The regulations implementing the ADA specifically prohibit the promulgation of discriminatory policies through contractual or other obligations, and in this situation, plaintiffs have alleged PPB has a discriminatory policy, PPB and the county have worked together, and in that relationship, the county implemented the discriminatory policies of the city. Therefore, the county is liable in the same way under the ADA. For these reasons, this court should vacate and remand unless the court has any other questions. Thank you, your honors. We thank counsel for their arguments and the case just argued is submitted.
judges: BENNETT, VANDYKE, THOMAS